Please record. There are many issues raised in this appeal, but I'd like to start with one that is case dispositive, and that's the construction of map-of-allowed approaches in both of the independent claims. The map in the accused MTRAC system is a map of detection zones, which GTT's expert testified were fixed, static areas on the surface of the road. The map-of-allowed approaches in the claims properly construed is a map of routes or paths to the intersection. There's an ambiguity in the word route and the word path. In one sense, it can be the physical space occupied by a highway or a well-trod path, and that is actually a static thing that can take any number of shapes, including a rectangle. And the other, or an other, meaning of route or path is I think what you described as something dynamic, the actual course along which at a given moment somebody or some vehicle travels. How is it that this claim, and I think your claim construction argument as embodied in the heading, heading four of your brief, says it has to be something dynamic, something time-dependent, maybe even vehicle-dependent, and not a static shape like a long, long rectangle. That's right, Your Honor, and that is what we think is conveyed by the term route or path, and is the correct construction of approach. I would use the word conveys directionality, or the idea of conveying directionality, which I think is the same idea as the dynamic version that you're describing. I'm not quite sure it is the same, because in Claim 16, in the preamble, the term vehicle path is actually referring to the course along which a vehicle is moving, and then you do certain things in the body of the claim to do something with that particular vehicle, but the fact is what's stored in the system is a fixed shape, non-static, two-dimensional area. Well, I agree that it's stored, I agree that it's two-dimensional, I agree that it's any number of different shapes. This doesn't say what shape it has to be. It can be a rectangle, it can be... That's absolutely true, Your Honor. It doesn't have to be any specific shape, but it must track directionality. So if you look for, and shape is, the problem that I'm having with the word shape is that shape conveys this idea of a two-dimensional space. If you look at figure four of the patent, the thing that is labeled as the approach path, figure four, is element 440. It is the arrow and the line that goes away from the intersection to the intersection. Right, and the approach corridor is 480. And a corridor is, I think, what you're describing, Your Honor, as something that could embody the same space, or could overlap with a path, but is different from the directional movement of the path shown in 440. And the answer is pretty clear. First off, I think that the concept of approach and approach path, those are two terms that the patent is using synonymously. We know that from, among other things, Claim 18, where the claim describes a position of an allowed approach, and then in a subsequent limitation, describes the allowed approach path. So the allowed approach path, the only antecedent for that is an allowed approach. It's using approach and approach path synonymously. We also know that the specification... Wait, wait, wait. Let's go back to that. Sure. You're saying they use them synonymously. An allowed approach means any approach that might be allowed to the intersection, right? Correct. So you've got this body of possible approaches. And then when you talk about the vehicle's path, a particular vehicle, whether or not they end up on a particular approach, is a different analysis. Your Honor, I'm just making the point that the patent uses the term approach and approach path synonymously, in both instances talking about directionality and movement over time. Is that basically the same thing as a map of roads? No, it is not. And the reason is that it must convey directionality. A map of roads could just map onto a static location, the space of the road. If the map, where a map of roads with an arrow pointing the right direction to the intersection, that could constitute an approach, because there's nothing that prevents a car from traveling along the route of a road, but it must be a vector. It must convey direction of movement. Where did you make this argument below? Because I see the reference to path, no doubt. Correct. We call it a roadway path. But I don't see in either your Markman brief, to the extent we've been able to find any references to the Markman hearing itself, in there, in your JMAL, I don't see anywhere, any reference to vehicle direction. The answer is that it's in the term routes and paths that we proposed. Where did you argue that? Well, it was implicit in the report. I think that the construction that we proposed to the lower court substituted a route or path for approach. And by doing so, necessarily conveyed this idea of directionality. And, Your Honor, there was significant evidence at trial describing the difference in the operation of the MTRAC system versus the claims on exactly this ground. So, for example, during Mr. Cross's testimony, there was a video played that illustrated precisely the difference between the MTRAC system's map of zones and the concept of approaches. The video showed a firehouse. And in the map, in the MTRAC system, in the ACUE system, just put a box, a rectangular box around the firehouse, the zone, the static fixed area. When the firetruck wanted to preempt traffic from the firehouse, you would press a button and it would turn on its signal. At that point, the MTRAC system would automatically, because even though the firetruck wasn't moving at all, even though it was sitting in the firehouse, because it was in the zone, it would automatically change all of the lights in all of the different areas out of the firehouse to go green away from the firehouse. That's one example of the idea of a zone being used differently. But it's only one example. I guess one way in which to look at it is that there are at least three possibilities. There's the kind of zone you described and anywhere within a radius of whatever, if a vehicle is in there, all the lights do something. Another is the rectangle around the road. And that is the approach, but the vehicle data can include directional information. What I'm not getting is where you ever said or why one would read approach to embody directionality when the directionality can come from the vehicle data. The directionality can come from some other source and that would be a different invention. That would be a different way to solve the same problem. The reason that we know approach in the patent conveys directionality is that's how the word is used in the specification and in the example. I'm looking at your frame construction brief here and what you said was that, I mean, you simply said a map of allowed approaches means a pre-programmed map of roadway paths to the intersection. Correct. And then you cite actually to the specification that says intersection module tracks the path of a vehicle requesting preemption to determine whether it is within any of the allowed approaches. Absolutely right. So you might be arguing that ultimately the way the system works is that you have to know if the vehicle is going to be in an allowed approach, but a map of allowed approaches doesn't have that directional or non-static component to it. It does, Your Honor, and the reason... And you didn't argue that it did. Well, I think we did by putting the word routes or paths in there, but... So you're saying that you don't make the argument, you don't make it in your claim construction brief, you don't make it at the Markman hearing, you don't make it in your JMAL, but we're just supposed to assume that the court could figure it out. No, Your Honor. The court... Well, the court did figure it out because it understood our construction, it repeated our construction, which included paths or routes. It understood exactly what we were asking for and that's exactly the construction we're asking for here today. And this was argued in the Markman brief as to construe approaches to mean routes. The reason that we know it conveys that directionality... It doesn't say routes anywhere in the Markman brief, it says paths. You're right, Your Honor, but it does say routes in the joint claim construction statement and routes and paths, we would view them synonymously as conveying this idea of directionality. And the district court made very clear that the court understood our construction to be the one that we proposed as routes. It says, quote, at 810, M-TRAC urges a proposed construction of a pre-programmed map of routes to the intersection where the traffic signal that is to be preempted is located. So the district court understood it. We're urging the same construction. And if I just may briefly say that the term approach conveys this directionality that Your Honor, just Toronto was describing a moment ago. In the field of invention section, the patent says the field is a preemption system that receives data from a global positioning system to track the approach of a vehicle. So it's using approach, the noun, with the verb track. You can't track a static area, but you can track the concept of an approach that requires movement. The same thing happens in column A lines 13 to 15 describing how you create the map of allowed approaches. It's when the desired approach is completed. You can't have a static area be completed. It requires directionality of movement. If I could briefly address the other claim construction issues, the means for transmitting term was proposed in means plus function form. The district court ordered that it have its plain meaning, that it err as a matter of law under this court's Metzler-Toledo case and under this court's Kemco-Stale case. The district court must construe a means plus function claim. It must identify the structure. They argue waiver on that point as well. I know that you cite to O2 micro, but can you point us to anything in the record where you can establish that you did not waive that issue? Absolutely, Your Honor. So if you look at A14, the district court's construction itself, it says the district court describing our argument says, quote, M-TRAC argues that these phrases are part of a means plus function claim and that the wireless link is the only structure disclosed by the specification which could perform the function of transmitting vehicle data. District court understood it. Our Markman brief, our opening brief says the same thing at page A5178. Our reply brief says it again at A5750. We made the argument the district court understood it. And then also at the Claim 16, the method claim, we also urge the court if it were to, the means plus function issue resolves Claim 1 clearly, and that alone requires a new trial because the damages award was based on the combination. But if the court breaches Claim 16, we urge the court to look carefully at the clear evidence that STC did not have knowledge that the induced act constitutes patent infringement. What do you make of Mr. Morgan's testimony that, I think this is at 1734, where he says, I learned of the patent and then we, and that's I think quite clearly him and Cross, Cross is STC, we decided not to read the patent because we, et cetera, and there's three times he says we, we, we about the, let's use the phrase, willful disregard of the patent. Respectfully, Your Honor, I don't think that that language refers to knowledge of the patent at all. There is no testimony in the record where, that GTT has pointed to or that we're aware of, where the patent information about the patent was actually conveyed to Mr. Cross. The line that GTT points to is, I went down and talked to Brad. The next two words are. I'm sorry, that was not the testimony I was. Oh, I'm sorry, Your Honor. Okay. That's the 1729-30. Right. That's what I said was 1734, where I can't, can't find it where, where he says, we decided not to look at the patent. We chose not to read it because we were developing a product and we didn't want to, et cetera. Your Honor, I would have to go back and look more carefully at this testimony. I don't think that there's an indication that it is Mr. Cross or STC there, and I would just reiterate that. Well, he and Cross were the ones developing the product, right? He, Cross, and others were involved in developing the product. But, so I can't say that I know what his we is referring to there without going back to look at the rest. Thank you, Your Honor. Okay. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Brown. May it please the Court, Chad Brown from Figury Beaker Daniels. Your Honor, STC wrote an instruction manual in this case that used, that tracked the language of Claim 16, and many times used the exact same words as Claim 16. And we think that instruction manual... Well, let's talk about the construction of Claim 16, because they say it means paths, the map of allowed approaches has to have paths or routes. Do you disagree with that? Absolutely, Your Honor. And the issue that they raised on page 43 of their opening brief is they say, quote, the fundamental dispute between the parties regarding implementation is whether an approach can encompass a fixed area, like a rectangle on a map. So that's what they say the fundamental dispute is. And we think the claim language answers that question definitively. Suppose what they really meant was a fixed area with directionality associated with the area, and they just forgot to mention that phrase. Sure. And we don't think directionality is required in the claim. Why is that not inherent in the term approach? Because the claim says this. The claim says providing a map of allowed approaches. So we're in the world of maps, and maps don't necessarily have directionality. But they can. They can, but they don't have to. The map is a fixed geographic representation of areas. But of routes, no? I mean, the specification seems to pretty clearly say the map of allowed approaches is specific routes to the intersection, correct? No, it doesn't actually. It uses routes twice in other contexts. Well, path or route are the same thing. I mean, if you look at column five of the patent, line 55, it says the intersect module takes the path, tracks the path of a vehicle, et cetera, et cetera. A pre-programmed map of allowed approaches to the intersection is stored in map memory. And doesn't that indicate that the map is showing paths to the intersection? Right. Actually, what it is, it's distinguishing between, I think it was Judge O'Malley was making this distinction too at column five, as Your Honor just read at line 55. It says it tracks the path of the vehicle requesting preemption to determine whether it is within an allowed approach. So the path of a vehicle is entirely different, some think, than the map of allowed approaches. You track the path to determine, and then the system determines whether it has entered within an allowed approach. And we know that because the claim says it's a map. Maps, whether it's, I'll be so bold to say, whether it's a route, a roadway, a path, or an approach, if it's on a map, it's fixed. That's what maps are. But look at column three. Sure. It says a major drawback of radio transmitters is, while they do not require a line-of-sight approach, their inherent lack of directionality means that they may erroneously control a signal light which is not on the vehicle's route, but which is proximate to the route. Correct? And isn't this invention designed to solve that problem? This invention is designed to do a very simple thing. No, no, but answer my question. It's identifying a defect in the prior art. Is not this invention designed to solve that problem? I would say, yes, one of the things this invention is doing is improving upon the prior art systems, but it's doing it by this. Getting GPS signals and knowing where the vehicle is getting that data, and then it has these maps that are already stored. The claim itself calls them pre-programmed. Pre-programmed meaning they exist. They're fixed. They're stored on a memory chip. And it calls them a plurality of pre-programmed allowed positions. And we know from page 44 of their brief, they- Positions, not paths, is what you're saying. Well, the claim tells us what map-of-aloud approaches is because it says a map-of-aloud approach is- Doesn't require paths or routes. It requires allowed positions. But not paths or routes. It could be, like I said, it could be a path, a route, an approach. If it's on a map, it's a fixed area because that's what maps are. But they admit in their brief, the claim language itself that- It does not have to be a path or a route. That's what you're contention, that map-of-aloud approaches does not have to show a path or a route to the intersection. Well, it just has to show a position. Is that correct? That it does not have to show a path or a route? I'm not sure I quite understand the question. But if the- It's a map-of-aloud approaches and we think the claim explains what that is and what I'm saying on this issue is it doesn't matter if they're trying to put the word routes into the claim because we win anyway. They have routes to the intersection that are on a map. And we know that because at A2569, Mr. Cross admits that their system, if we turn to that, has a map of approach zones stored on their memory. This is questioning Mr. Cross at trial. And the question was, we're quoting a document that says, the software maintains a database of this information and graphically displays the streets and approach zones for each intersection in an integrated map format. And he says, yes. I thought both your expert and their expert, Andrews, described their system as involving a rectangular area which determines the proximity of the vehicle to the intersection based on whether it's within that rectangular area. Is that correct? That is correct. Okay. And that's exactly what they do. It's shown in their manual. Okay. So why is that a map-of-aloud approaches, the rectangle? Because that's a map of an area where if the vehicle is within it, the system will recognize that and get a green light. It's a map of fixed geographic area in which, if the vehicle enters into it, you're going to get a green light. That's as simple as that. That's all the claim says. It's a plurality of pre-programmed storage. How do you take account of allowed approaches in that construction? That's what the claim is talking about, allowed approaches. What does that mean? It's areas. Areas? Pre-programmed allowed positions. It's just areas? Well, that's the idea of it, yes. But if you want to go to the claim language, it's pre-programmed allowed positions, which they admit in their brief at page 44, are static. They say that. They say they're static. Even assuming, though, that it's not a claim construction issue because the allowed approaches, the vehicle has to determine if it's within the map of allowed approaches so that we're talking about a static map. It goes to the question of infringement, I think, is where Judge Stike is going now because his question is, how does a rectangle infringe on an allowed approach if the rectangle doesn't necessarily account for the existence of an allowed approach? Well, the rectangle, that's how they create their allowed approaches. There's clear testimony about that from our expert. I think it's 1482 to 85 or somewhere in that frame where he explains they create these allowed approaches by two points, a latitude and longitude point with a width, and then they draw the approach for the rectangle that they have. I mean, that wasn't an issue at all. And those two points are on a road in the creation of their system? In the creation of their system, it actually is. That's 2569, Mr. Cross, he's saying, and quote, and is that a depiction of the different zones that are created on a map by the M-TRAC GPS system? I assume their representative, yes. Yeah, there's zones on the map, but why is that a map of allowed approaches? Because those are areas, they're positions. An approach is an area? It can be an area, but if we want to use the claim language, which is fine with us, it's a plurality, two points of positions approximate to the intersection. So if you enter in one of those, the system will detect you and you'll get a green light. So we think this claim construction issue was, as Mr. Jumeli explained, not raised below. They don't talk about fixed position or anything. They did talk about paths, right? The word paths, and then they switched, and now this is actually their fourth construction of this term that they're trying. So if I could, Your Honor, we think this issue is not properly raised, but the claim language itself clearly addresses what a map of allowed approach is, and it doesn't require movement. We don't know what that means, but maps don't move. It's just a map of allowed approaches, and the claim defines it, what it actually is. So if I could, I'd switch to knowledge, and I just want to make sure the court is aware of inducement. We have Mr. Morgan at 1779 to 1880 admitting he knew of the patent in 2004, and then at 1608 of the appendix, Mr. Morgan is asked this question. Quote, you knew there was a patent that related to GPS technology and traffic preemption. Answer, right. Question, and did you try to review that patent before launching the second generation Amtrak product? Answer, oh no, no. Brad Cross and I both talked about that. Even if we agree that there's substantial evidence to support the conclusion that the jury reached as it relates to indirect infringement, don't we have to send it back, at least for a new trial, as to Mr. Morgan in light of world tech, since we can't tell from the jury's determination whether it was based on direct infringement or indirect infringement? That issue hasn't been appealed or raised, or there was no objection to that issue below, so we don't think that's an issue. There was no objections below, I agree with that, but it is raised on appeal, isn't it? There's no argument on appeal at all about the jury verdict and any confusion about whether it was direct infringement or indirect infringement. Well, they specifically rely on world tech to say, and say that there should have been an instruction as it relates to piercing the corporate veil. No, that's not their argument. Their argument was that you have to pierce the corporate veil and cite world tech, but they don't say, wait a minute, there's a problem with the jury verdict. They just got the law of world tech wrong. World tech says if there's inducement, a person can, an individual can be liable. So we think that issue that your honor is raising hasn't been raised by them at all, but world tech clearly says for inducement, an individual can clearly be liable. And then I just want to make clear, the manual they wrote was written by FTC. It has many of the exact words of our claim. So that gives a very strong evidence to the jury that sees that manual too to say, wait a minute, you knew of this patent. You wrote a manual that has the words of the claim in it. Yeah, I think that I'm going to infer that you would have known this was going to be infringement. FTC also wrote the source code that required them to perform the method in an infringing manner. But what about Co-Mill? Assume that the Supreme Court were to affirm Co-Mill and say that you had to have knowledge that this was an infringement. What is the evidence of that? Absolutely. If somebody says it's okay if you have a good faith belief of non-infringement, that that's going to be a potential issue for a defense. It's not a full defense. But as Co-Mill explains, and as the recent Smith and Nephew case explained, that's one fact that the jury is supposed to consider. It's quote relevant evidence. The jury heard it and rejected it. And as in the Conmart case, the jury doesn't have to believe any of their exculpatory evidence. That's the function of our system of juries. But here there was much more than that. They can look at Mr. Cross on the witness stand and say, you know what? I don't believe you. I see the manual you wrote, Mr. Cross. This is something that I'm going to infer knowledge and you're telling me that you had a good faith belief? Why does writing the manual in similar language show that they knew that there was an infringement? Because they're using the exact words of the patent that teach how to infringe to customers. They're writing source code that require customers to infringe. And it wasn't like this good faith belief argument. It wasn't like he sat down and told the jury, here's the patent claims and I can tell you which ones I looked at and let me do an analysis for you. He just said, well, ours is vehicle centric. There's is intersection centric. And that was it. That's not a good faith belief, especially in light of all these facts. And it doesn't matter for claim 16 because that's not an issue. That whole thing they're trying to do about difference of products doesn't matter for claim 16. So we think the good faith belief is an issue the jury gets to consider. They consider it. And in our system, the jury gets to reject it. So we don't think that's going to be an issue. On damages, I just want to make two- Let me, I want to ask you about willfulness before you sit down because I don't understand how we don't have to vacate the willfulness determination. I mean, the court used the wrong standard when it was assessing the objective prong of willfulness. In fact, the court went on to say that their litigation posture as it relates to validity was reasonable. Doesn't that answer the question of objective reasonableness? Actually, no, Your Honor. We don't think the court used that language. What the court said was in discussing the read factors for enhancements, the court said- Yeah, yeah. But the point is that in discussing the read factors, she made findings which would seem to establish a lack of objective unreasonableness. No, if I sit, Your Honor, I'll go right to- What the court said with respect to the initial assessment was that pre-litigation, they didn't know, they didn't look, so they couldn't have known anything. And then went on to say, but once the litigation was instituted, yes, they had reasonable defenses. That's the wrong inquiry, isn't it? You're not just supposed to look at pre-litigation. The actual language, if we can focus on what the court actually said was this, quote- What page are you reading? This is page 44 of the appendix, right in the middle, under behavior as a litigant. And it is, quote, this view was not so unreasonable that it was asserted in bad faith. So the court was saying it was unreasonable. You had unreasonable positions, but it wasn't so unreasonable that it was in bad faith, like you were trying to harass- Look at A45. As mentioned above, defendants had good faith in validity defenses once litigation began. How do we get around that finding? Let's just be clear. They're not arguing that they had good faith in validity defenses. We can read their briefs left and right. They don't raise a single invalidity issue on this appeal, and they don't- They don't have to raise it on the appeal, as long as it was a reasonable defense at the trial level. Well, if they're not arguing on appeal that one of the reasons there was no willfulness is that they had good faith in validity defenses, then under this court's precedent, that's clearly waived. We didn't argue that in our- There's no case that says that you have to argue the defense on appeal in order for it to be reasonable for willfulness. Well, there are cases, Your Honor, that we cite in our brief that say if you don't raise an issue on appeal, it's clearly waived, and if we were given the opportunity to brief that issue, they didn't brief it, we didn't brief it, it's not in their reply, and so we don't think that you can try to rely on something the district court was talking about in the context of something other than the objective. Am I right that in the one-page willfulness section of their brief, they don't cite that passage of the district court? You are correct, Judge. They cite only A44 and not A45, and they don't say, here's a hint about the invalidity defenses we had, and we're not going to argue them here, but we can explain why they were reasonable. Absolutely, that's correct. And then as to damages, two points. They say this in their reply that Mr. Garowski didn't discuss price elasticity at trial. Two points on that. He did, and he wasn't required to under federal rules of evidence 705. He raised three points at trial on price elasticity, and those three points are at A2102 through 2103. He said this is a critical product to the public. We had already established our pricing, and this was a two-supplier market. And then under rule 705 of the federal rules of evidence, it specifically says, once you pass through the gate at trial, then you just get to give your opinion. It's up to them to cross-examine. In this court's case, it's applying 705 to typically say that. And then I'll just mention I think unless my colleagues have further questions, we're out of time. Thank you. Thank you, Mr. Jones. I appreciate it. Your Honor, just two points. Mr. Gross did correctly characterize the dispute when he said he wanted to be bold and say if it's on a map, it's a fixed area. We disagree. That's not the way the patent uses the word approach in the claim term map of allowed approaches. It talks about tracking an approach. You can't track a fixed area. It talks about completing an approach. You can't complete a fixed area. But it doesn't talk about those things in connection with the map. It talks about when you're then tracking the vehicle. So isn't your argument not a claim construction argument as it relates to map of allowed approaches, but it's an argument as it relates to infringement, which you had the opportunity to present to the jury? It is a claim construction argument because the map of allowed approaches, there's been some dispute about whether an approach can be a fixed area or not in the claim term map of allowed approaches. Had the court construed it to mean a map of routes or paths, as we argued, then it would have been inappropriate to then make the argument that a fixed area could meet it and there would be a non-infringement decision. But it is a claim construction question. And is there any doubt that there's confirmation from the patent office just in the re-exam certificate that was just issued a couple of days ago and the reasons for patentability underlying that certificate, they distinguished a prior art reference by saying there is no map of allowed approaches to a location as there is no defined approach to any specific point. It's the patent office rejected the argument that if it's on a map, it's a fixed area. And Your Honor, the second point, the idea that the exact words of the claim appear in the manual is indicative of the way that this case is ultimately tried to the jury. And it's indicative of why this is a claim construction issue that the district court judge needed to resolve before this went to the jury. That's exactly the argument they made to the jury. The words show up, therefore, there must be infringement. Can you just clarify something? In your system, how do you create your detection zones? That's a great question, Your Honor. The answer is there's no tracking of a vehicle. A person sits down with a map in a computer way and draws areas. With roads on it. The map has roads, but the areas don't have to correspond to the roads and they often don't. They certainly don't correspond to the full road up to the intersection, the approach. But you're not drawing areas that don't have roads in them. I mean, that's exactly what your own witness testified, that that's how you pick the areas to draw. You pick areas to draw because you're interested in what those areas will do to intersections and intersections happen at roads. But there are a lot of examples where you pick areas that are not on top of the roads. One is the firehouse box example that I described. Another is, for example, if there's an intersection, you might draw an area that's perpendicular to the intersection over here. And you would know that... I'm sorry, the firehouse is not on a road? How does the fire truck get out of the fire? The firehouse is on a road, but the zone corresponds to the building and to the area around the building, not mapping onto the road itself. We agree, Your Honor, there are roads on maps and you take where the roads are and where the intersections are into account in drawing the fixed areas. But that is not the same as mapping approaches. And to map an approach, you have to do what is described in the patent, which is have a sequence of points and map the vectors, map the direction that's different from mapping the static area. Thank you, Your Honor. Okay, thank you.